Good morning, ladies and gentlemen. Our first case for argument this morning is Coyle Nissan v. Nissan North America. Mr. Flowers. Good morning, Your Honors. May it please the Court, my name is Paul Flowers. I represent the plaintiff appellant, Coyle Nissan, LLC. I'm joined by my co-counsel, Ronald Smith. We are here on a dispute between an automobile dealer in Clarksville, Indiana and the Nissan car manufacturer. I'll probably refer to Nissan, the defendant appellee, as NNA at times throughout this. I think you would do a lot better by using real words rather than made-up initialisms. I will do my best, Your Honor. This all started in 2012 when my client, Coyle Nissan, purchased a Nissan dealership in Clarksville, Indiana. My client, Coyle, had been involved for three generations in the Chevrolet dealership business, which had been very successful, and they were moving on to Nissan. What happened over the next several years was a course of events where the parties were required to pick a location, and there's no dispute that the intention was that my client would construct a state-of-the-art, stand-alone Nissan car dealership competing with the nearby Toyota and Honda dealerships. Never any dispute about that, but the question was the location. Can I interrupt? I think we're well-versed on those facts. One of my burning questions for you is we see that Nissan North America extended the deadlines routinely and then ultimately approved the Broadway site. And what is not clear to me from the record is why, after all these extensions, and then you've got new deadlines, Coyle does, for April 15, 2017, October 1, 2017, complete construction in 18 months was the final set of extensions at issue here. Why Coyle file suit instead? Well, five years had gone by in which Coyle had made a tremendous investment of both time and effort into locating a suitable location, and it was just not economically feasible by that point in time for them to proceed with this planned state-of-the-art facility. So Coyle got that last extension, but at that point had no plans to then continue on with the idea of building a facility? On the Broadway site that has now been approved. Right. The plans always were to proceed there. Now, remember, this was the Broadway site that was rejected in 2012. I know, but now it's approved. Right, approved five years later at a point in time when they had lost out on incentives. They had not been making the money they thought they were going to make. They had invested quite a bit in not only locating this property, but also in purchasing an option that then expired. It just was economically so far late in the game that it didn't make sense for them to proceed. They couldn't proceed. And then once you file the litigation, everything stops. It doesn't make any sense to proceed with that kind of investment until the court rules and determines the party's rights and obligations between each other. That's really how it all evolved, and it was the constant delay, the constant changes, the shifting goalposts throughout that five-year period that really put Coyle in a very financially precarious position. Had this been approved at the beginning, I mean, had they not waited five years to approve the Broadway site, then absolutely that would be there right now, state-of-the-art facility competing along with the nearby dealers. There would be no question about that. But that goes into the whole question of good faith and how Nissan, the manufacturer, was responding to all this, which is a fourth count of our complaints. So, Mr. Flowers, what is your best evidence that Nissan did not act in good faith? Well, I think what jumps out to me, the best evidence, is the fact that they had this 2010 report, this economic study, that they don't disclose. But does the contract obligate them to disclose that to Coyle? No, which is what they say. They say, ah, we didn't have to. But that's the whole issue of good faith. And that's where the district court goes astray here. But isn't good faith, I mean, however, it's moored at least to the terms of the contract, right? So when the contract gives a party discretion, that's kind of when good faith kicks in. But the good faith obligation doesn't by itself create any independent obligation separate from what the contract provides. No, I completely agree. What we've got here is a situation with complete control through this agreement. The discretion on Nissan getting to pick the location, that's not there. I mean, they get to approve it, but it's subject to terms and conditions and so forth. Even they say it's not on federal discretion because they're trying to get out of that bad faith angle. But what the trial court missed here was that the concept of good faith, as well as these dealer protection laws that we're citing, go beyond just simple principles of contract. I mean, we've already had a cause of action for breach of contract. What Judge Lee just said and what you agree with is that this duty is a duty to keep the contract in good faith. And you've agreed that Nissan kept its contract. In fact, more importantly, that's what the jury found. This case was tried. The jury found that Coyle breached its contractual duties and Nissan did not. I don't understand what could be left in this case, given the jury's verdict. Well, let me back up there. The jury trial was limited to the Second Amendment. All the jury found was that Coyle had not complied with the Second Amendment, Nissan had. The Second Amendment just dealt with the belated approval of the Broadway site in 2017. I think you might want to expand on that. When you say Second Amendment in a federal court, people think about guns. Right. The Second Amendment to some particular document. It should be more clear. The Second Amendment to the Dealer Services Act, which was adopted once Nissan finally approved the Broadway site in 2017, that jury trial was limited to that. And there's a whole lot more to this contract than just the Second Amendment to the agreement, not the Second Amendment to the Constitution. Nor the Second Amendment to some statute. Correct. Correct. So that jury trial is just limited to that. We still maintain that Nissan breached the agreement because they didn't approve a site that was approvable. And just going back to your question, Judge Lee, about the best evidence, I mean what jumped out to me was we had this 2010 study, or Nissan had the 2010 study, saying you should build on the west side of I-65. That's the preferred area. That is right where the Broadway site is and a couple of other sites that were proposed. And you're right. The agreement didn't require Nissan to disclose that. But the concept of good faith, and this is going back to what you were asking Judge Easterbrook, in California is just that you cannot defeat the other party's right to the benefit of the bargain. I thought, though, that Nissan noted, like, the other issues with the Broadway site, which was the lack of visibility and kind of the fact that it was behind kind of the main thoroughfare. Tucked away. Right, exactly. And that seems like things that Nissan, within its discretion when it looks at, I mean, I think the contract allows Nissan to look at kind of the marketability and, like, commercial viability of the place. Those factors seem to fall within that category. First of all, those are matters of pure subjective belief. I mean, purely subjective. We don't like the accessibility. Now, it's weird because this is going to be built on Broadway Avenue, Clarksville, Broadway Avenue, right there. But they say it's not accessible. This is not a dead end road. This is not something that just goes nowhere. This is Broadway Avenue. It is close to I-65. You can see the frontage going all the way up and down I-65. It's accessible. It's visible. It's just as visible as the Honda and Toyota dealers there once the signs are up and so forth. So that's something where a jury could say, no, that's nonsense. We're looking at photos of this, and it's just as visible, it's just as accessible as the other dealerships in that area, if not more so. So the judge took that away by first granting judgment on the pleadings on the claim for fiduciary duty, and then later summary judgment on the remaining claims. The jury never got to question whether Nissan's assessment was accurate. And as far as discretion, I mean, they're trying to play both sides of the fence. I mean, they're saying we had the discretion to pick. We could reject this if we wanted to. But then when you get to the fiduciary duty claim in good faith, they back off. And they say, well, it's not unfettered, and they're right. You raise a good point about the fiduciary duty claim. If we could focus on that for a second. It seems to me that at least current Indiana law seems to indicate that where there's a contract between two sophisticated commercial parties, and I think COIL would count as a sophisticated commercial party, that there's no place for a fiduciary duty. That one party doesn't owe a fiduciary duty to the other outside because you have the contract that dictates those obligations. Right. And that language about the sophisticated parties at arm's length comes from that Ray Skillman Oldsmobile case they're citing. And in that case, that contract disclaimed a fiduciary relationship, said there is no fiduciary relationship. That's not in here. That's not in here. And it starts off with the introduction. I'm going to insert the parties' names. COIL has entered into this agreement in reliance upon NNA's integrity and expressed intention to deal fairly with COIL and the consuming public. But doesn't that obligation kind of went both ways, right? Isn't there a similar provision that Nissan also entered in the contract, assuming that COIL would act in good faith? Oh, I wouldn't disagree. Right. Of course, COIL has got to act in good faith as well. It's a two-way street. I guess my question is, you know, typically when two parties have a contractual relationship, we are loath to find some sort of fiduciary duty from one party to the other because that would basically void or vitiate kind of what the contract was for. And so what factors here do you think give rise to a fiduciary duty between Nissan and COIL? Well, it's like the Aston Martin case. It's the control and the confidentiality. I mean, this agreement gives Nissan almost complete control. There's no autonomy. They have control over the facility, including the ceiling tiles that are allowed to be used. They have control over the sales. We don't get to pick the cars we want to sell. Isn't that the case, though, for any franchise or franchisee agreement? It doesn't appear so because there's some cases that say, like, oh, there's autonomy here. And they don't explain it, so who knows? Well, this leads me to a question I have about your – there's this part of the reply brief where you say you weren't allowed to develop evidence and support or engage in discovery and offer evidence on this fiduciary duty claim that you're discussing with Judge Lee. What helpful evidence do you think you would have dug up on this? Well, we've decided to just take the position that the evidentiary record was sufficient to justify a denial of summary judgment upon that. No, actually, fiduciary duty was denied on the pleading, so we don't need evidence. But it's just the control. It is so thorough and complete in this agreement. Really, Nissan had no ability to do anything without Nissan manufacturers' approval. And that's okay because you're assuming that there's this duty of good faith and that there's these fiduciary responsibilities here, and that's okay. We can live with that. But when the judge just says, ah, they comply with the contract, you know, your claims are dismissed, that's not the law. These dealer protection laws are here for a reason. So I'd like to save my remaining time for rebuttal. Thank you. Certainly, Mr. Flowers. Mr. Wells. Good morning. Good morning, Your Honor. Stephen Wells for Nissan North America. I'd like to focus my remarks this morning with the court's indulgence for a few minutes on the breach of fiduciary duty claim and then spend some more time on the breach of duty of fair or I'll call it the bad faith claim. With respect to the fiduciary duty claim, the allegations in the complaint are about as bare bones on this as possible. They don't meet the standard of Iqbal. They don't meet the standard of Kapoor and the other Indiana cases, which say that one has to, that in accordance with the overwhelming authority in other jurisdictions, that a franchise agreement does not give rise to a fiduciary relationship and that an arm's length contract does not give rise to a fiduciary relationship. And therefore, you must plead something different. You must plead exceptional or special circumstances where there is an unusual aspect of trust and reliance and confidence. None of that is in the complaint. In the Kapoor case that's from the Indiana Court of Appeals, it talks specifically about an analogy here as to a trusted financial advisor. There's nothing in the contract in this case that would suggest that Nissan was in the place of a trusted financial advisor. There were mutual obligations. There were mutual duties. Mr. Flowers says that Nissan had complete control. That's completely wrong. If you look at the marketing and advertising parts of this contract, they say specifically it is the duty of the dealer to engage in the marketing, to develop its marketing plans, you know, as just one indication. The contract itself makes clear that this is a personal services agreement and relying on the dealer for the specialized knowledge and expertise of the dealer. So this is a contract with great mutuality. It's not a contract of adhesion. It was a contract between two arm's length and seasoned commercial entities. I would also point out that there just aren't any allegations of special trust or confidence. And, in fact, the only time in the complaint where it says anything about the expectation of a confidential relationship, there's no mention. First off, there is no mention of confidential data or confidential information. The confidence that they allege in the complaint is that Nissan will do its duty in good faith. And that, of course, applies to every contract between two commercial entities. So there is nothing, there are no exceptional circumstances here.  If I could stop you for a moment. What do you make of Mr. Flowers' concern that Nissan had this 2010 study and just simply didn't give it to, never really came up in its discussions with COIL with regard to the Broadway site? Your Honor, I think that's, I would just point out that I don't believe that allegation was made in the complaint with regard to the fiduciary duty claim. But it is made and expanded really for the very first time on the appellate brief with respect to the bad faith claim. So let me address it in that context, Your Honor. As Your Honor pointed out, there is no duty of Nissan to provide the 2010 market study. Second, there is no allegation in the complaint about why that fact is material. In other words, if you look at the complaint, the entire theory of the complaint is that Nissan took too long to approve the Broadway site. I ask rhetorically, what does the, what would the 2010 market study have provided and how would that have changed the outcome here? No explanation is given. Let me interrupt you there, Mr. Wells, because with this claim we're under California law, is that right?  Okay, so under California law, it doesn't require breach of a contract or that some aspect of a contract not be adhered to, to find a breach of the implied faith of, implied contract of good faith and fair dealing. In other words, just because something's not required by the contract doesn't mean that that couldn't evidence bad faith, whatever the other party did. So given that, you know, why isn't the 2010 study, and Nissan being a little bit coy about that, and then also the changing preferences, one day they want east of I-65, the next day they want west, east-west, east-west. Sometimes they're not informing COIL. Why couldn't a reasonable jury take those two facts and say, there's some evidence here that Nissan was trying to frustrate COIL's ability to perform this contract? Because that's all a jury would need to conclude. Well, I'll try to address both of those questions, Your Honor. Number one, with respect to the market study. California law also says that the duty of good faith and fair dealing does not create a duty that's not bound in the contract. So it doesn't impose additional duties. That's number one. Number two is, I come back to a couple of- Well, but what they're saying is that that would only apply if we had some duty to do it, I think, Your Honor. I mean, I think that's the short answer to that. But there are many more reasons why that market study argument just doesn't fly, and I'd like to go through those, if I may, for a moment. Number one, that was a 2010 market study. It was out of date by the time that- and it had to do with another dealer, Bales, who was in a different location. So there was not only no obligation, but it was out of date and there was a different- it was dealing with a different dealer in a different location. And, Your Honor, number two is, this is an argument that was never fleshed out before the district court. There is- is there a mention of it? Yes, in one bullet point. The entire breach of contract, breach of good faith and fair dealing argument in the trial court, Your Honor, is limited to two paragraphs and less than a page. The very first time this argument was fleshed out was in the appellate briefs of the appellant. And now this argument constitutes 16 pages of appellate briefing, where it started out as two paragraphs, essentially. So it was waived, Your Honor. This argument is forfeit. Cursory- we all know the court's views about cursory references. This could not be more cursory. So that's an additional reason, Your Honor. This argument was forfeit and was waived. But let me come back to the issue of materiality. There is no argument from the other side about how anything would have changed if they had gotten the 2010 market study. They make a big deal about this preferred area. And, Your Honor, this kind of bleeds into your second question. They give no indication of why Nissan's preferred area has any importance to them. In other words, what's at issue here is whether or not there were facilities and a location available in this entire geographic area that they were responsible for. Isn't that a somewhat of a specious argument that they need to establish why Nissan's preferred location is important to them, when their whole obligation under the contract is to come up with a site that Nissan will approve, and when half or more than half of the approvals amounted to Nissan saying it's not in our preferred area? Nissan never turned an issue- never, Your Honor, in all the allegations and evidence before the court, never turned down a proposed site simply because it wasn't in a preferred area. That's undisputed. And, in fact, Your Honor, Nissan approved a site proposed by COIL that was in an unpreferred area, because it was the only thing that was available. The grounds for Nissan's turndowns had to do with visibility, accessibility, and in one case, Your Honor, the fact that it was in an undeveloped area next to a pornographic store. Those were the reasons why Nissan- that Nissan gave. There's no evidence that any of those were wrong. There's no evidence that any of those were in bad faith or intended to harm the dealer. So, Your Honor, I take exception to the notion that this is a specious argument. What's specious is the notion that somehow they don't have to show materiality for any of the minor grievances that they're raising now, for the first time, on appeal. And that's what this amounts to, Your Honor. The fact that they disagree with, you know, the fact that Nissan didn't show them, at least initially, the 2010 market report, doesn't really- it's a grievance. It doesn't rise to the level of materiality, because they haven't shown how that's important in any way. And that's their duty, Your Honor. That's their duty. Mr. Welch, you can see how COIL- the COIL parties might be a bit frustrated here, right? Because take that site next to the adult entertainment store. You know, my understanding is at some point they had actually an option to purchase that site. They go to Nissan. Nissan says, no, we can't- we're not going to let that happen. We don't think it's the right- it's appropriate because of the reasons that you cited. And then- but later on, Nissan comes back and says, you know what? That site would actually work. And by that time, COIL's option, you know, had basically expired. And so the- one could see how COIL might be frustrated in this process, because as, you know, we noted, Nissan does seem to go back and forth a bit on its preferred options, you know, as time goes on. Judge, I don't think there's anything in the record that suggested that what they called the Jeff Town site next to the adult bookstore was later deemed to be okay. And what the record evidence shows, Your Honor, is that Nissan told COIL even before it entered into the contract that that was an unacceptable site. And that's admitted by Michael COIL in his deposition, and we've cited that. So, Your Honor, they could not have had a reasonable expectation as to what they're calling the Jeff Town site. And, Your Honor, I would say that the only site that there's evidence that Nissan went back and forth on to some extent is that Broadway site. And that has been fully explained. That was a- I'll call it a C-minus, a D site. It was behind their existing dealership. It was not reasonably equivalent to the Toyota and Honda facilities down the road, which had perfect access, or, frankly, even COIL's dealership. So, of course, Nissan didn't- and, again, COIL was told before the contract was even entered into that that one was unacceptable. But at some point- Could I ask you a bit about the declaratory judgment that the court entered? Yes, Your Honor. And I know there's a dispute about that between the parties. So the judgment that was entered states that the jury rendered its verdict on counterclaim claim one, breach of contract, in favor of counterclaim at Nissan North America and against counterclaim at COIL Nissan. However, the jury determined that Nissan North America was not harmed by COIL's breach of contract. So my understanding is that under California law, one of the elements of proving a breach of contract is damages, right? And the jury, in its special verdict form, found that Nissan did not suffer any damages. So is it correct as a matter of law to say that the jury entered a verdict in favor of Nissan on that claim? Yes, it is, Your Honor, because- and maybe I could just explain a little bit about what happened here in the short time I have left. So as we approach trial in this case, Nissan- this is all on the record- Nissan had a breach of contract claim and a counterclaim and a declaratory judgment claim. The breach of contract claim had attached to it a request for specific performance because- and specific performance, we alleged, was appropriate because damages were difficult to prove in a situation like this. As we got closer to trial, Your Honor, Nissan concluded that specific performance was unworkable here. And you can see, Your Honor, in the transcript, right before the case started, Nissan withdrew the request for specific performance. And so we were left with a breach of contract claim with no remedy, essentially, and the declaratory judgment. And what was important to Nissan, as we explained to the court, was the declaratory judgment claim. Because that's important- that can be important for future administrative proceedings and the relationships between the party. Coyle argued simply that- In the district court, did anybody ask for nominal damages? No, Your Honor, not on that claim. And I haven't seen any reference to it in the appellate briefs. That's right, Your Honor, no. There wasn't. And so what was important to us was the declaratory judgment. And that does not require damages. And with that, I'll conclude my remarks. Thank you. Thank you, Mr. Wells. Anything further, Mr. Flowers? Yes, Your Honor, just briefly. I do need to address this waiver argument on the 210 market study that had indicated that the west side of I-65 was the place to be. And the idea of this just surfaced on appeal, and that's not true. We know that because in the district court summary judgment ruling on page 2, she discusses the 2010 study in detail. Then she goes on in page 3. However, Compton, that's Nissan's representative- You would do better facing the court rather than trying to have us read papers ten feet away. Just trying to show I'm not making this up. Just face us and talk to us. Compton failed to inform- Face us. To paraphrase what the judge says on page 3 of the summary judgment order, Compton failed to disclose that they had that study indicating that the west side of the place was the place to be, the preferred area, while they were rejecting not just one, not just the Broadway site, but several sites on the west side without explanation and on grounds that really had no support at all in that study. That's the bad faith. That's the breach of fiduciary duty. Yeah, they didn't have to disclose it, but they were playing games. The game turned into, guess where we want you to be now? East side, west side, up here, down there. Accessibility, non-accessibility. A jury could find that that's all bad faith, that they were denying COIL the benefit of their bargain, the benefit of the contract. The dismissal of that claim just was not justified. As far as the control, the exhibits to the complaint are part of the complaint. They are in there. The attachments are extensive. Now, this is not a threadbare complaint. This is 137 paragraphs, 10 of which are devoted exclusively to fiduciary duty, and that includes the contracts, and the control they've got here is extreme. Advertising, yeah, we get to pick the advertising that they approve. Marketing, yeah, we get to do the marketing that they approve. Everything is subject to their approval, which they can withhold or not, with the exception of the location, which is debatable. Facility, yeah, they got to say a lot about how the facility was constructed. They did not necessarily get to say where it would be, and they certainly couldn't do that in bad faith. Just to get to the declaratory judgment, I know I didn't get to it, but it is important. And, yes, you don't have to show harm for declaratory judgment necessarily. Thank you, Mr. Flowers. You have to have an actual controversy. Thank you, Your Honor. The case is taken under advisement. Our next case is in the matter of international supply company.